# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 22-0220V

|  |  |
|---|---|
| SARA DAVIS BUECHNER,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br><br>Filed: February 26, 2025 |

*David John Carney*, Green & Schafle, LLC, Philadelphia, PA, for Petitioner.

*Mark Kim Hellie*, U.S. Department of Justice, Washington, DC, for Respondent.

**FINDINGS OF FACT AND RULING ON ENTITLEMENT**[1]

On February 25, 2022, Sarah Davis Buechner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA") following an influenza vaccine she received on March 3, 2020. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner has provided preponderant evidence that her pain likely began within 48 hours of her vaccination, that her symptoms

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

were limited to her vaccinated shoulder, and that she has satisfied all of the requirements of a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I. Relevant Procedural History

On August 17, 2023, after approximately two months of negotiations, the parties reached an impasse in their settlement discussions. *See* ECF No. 28. Respondent filed his Rule 4(c) Report opposing entitlement on October 5, 2023, in which he argued that Petitioner failed to establish that her shoulder pain began within 48 hours of her vaccination. Rule 4(c) Report at 6-7. Thereafter, Petitioner filed a Motion for Ruling on the Record and Brief in Support of Damages ("Mot.") on December 20, 2023. ECF No. 31. Respondent filed a response ("Resp.") on February 20, 2024, in which he again argues that Petitioner has not proven Table onset, but also adds an argument that she suffered symptoms outside of the vaccinated shoulder. Resp. at 7-8. Petitioner filed a reply ("Repl.") on March 5, 2024. ECF No. 34. The matter is now ripe for adjudication.

## II. Relevant Facts

On March 3, 2020, Petitioner received a flu vaccine in her left shoulder at a CVS Minute Clinic in Philadelphia, PA. Ex. 7 at 4. Petitioner states that her arm felt "sore and painful" the day of her vaccination and "intensified . . . unlike anything [she] had ever experienced from a vaccine." Ex. 2 at ¶10. On March 23, 2020 (20 days after vaccination), Petitioner had a telemedicine appointment with her primary care physician ("PCP"). Ex 3 at 6. The visit focused on two conditions for which Petitioner took regular medications without any examination. *Id*. at 6-8. The record notes that lab tests were recommended, but had to be delayed due to the Covid-19 pandemic. *Id*. at 8. There is no mention of shoulder pain.

Petitioner states that she was generally unable to seek care for her shoulder pain due to the Pandemic (which began and was ongoing in the spring and early summer of 2020). Ex. 2 at ¶11. During this period, she tried to stretch her shoulder and used weights, "even though the pain was excruciating." *Id.*

On June 18, 2020, Petitioner reported "persistent pain" in her left shoulder since her "flu vaccine in early March 2020" during a telemedicine appointment with her PCP. Ex. 3 at 10. Petitioner described a "full blown frozen shoulder" with significant "pain radiating down arm," "some numbness in the tips of her fingers", and limited range of motion. *Id.* The record notes that the doctor was unable to see Petitioner during the visit due to "technology failure." *Id*. at 11. Petitioner was referred to a sports medicine specialist and physical therapy. *Id*. Petitioner recalled being advised to have an in-person

appointment visit on June 22, 2020. Ex. 2 at ¶12. The record of that visit notes a nearly identical history identical to that in the previous virtual visit. *See id*. at 10, 14. On exam, Petitioner had good range of motion that was "slightly restricted by pain" and positive special tests. *Id.* at 16. The doctor thought Petitioner's numbness was possibly related to a cervical problem, but noted that Petitioner had "no significant neck pain." *Id*. at 16. She prescribed tramadol and referred Petitioner to sports medicine and physical therapy. *Id*.

On June 24, 2020, Petitioner saw a sports medicine specialist. Ex. 5 at 4. She reported "shoulder pain since 3/5/2020 after an influenza vaccination," with dull pain that worsened to "more severe." *Id*. On exam, Petitioner's shoulder range of motion was "off by 15 degrees of forward flexion and 20 degrees of external rotation." *Id.* at 8. She was diagnosed with adhesive capsulitis, prescribed naproxen, and referred for physical therapy and acupuncture. *Id*.

Petitioner had a physical therapy evaluation on July 2, 2020. Ex. 5 at 29. She reported left shoulder pain that she attributed to her flu shot on 3/5/2020. *Id.* She denied any cervical or radiating symptoms. *Id*. She exhibited reduced range of motion and decreased strength of the left shoulder and positive impingement testing consistent with her adhesive capsulitis diagnosis. *Id*. at 30-31. She returned for a second physical therapy treatment on July 9, 2020, reporting worsening symptoms. *Id*. at 59.

Petitioner also received acupuncture treatment on July 2 and 9, 2020.[3] Ex. 9 at 3-5. At her first treatment, Petitioner reported that she had a flu shot in her left arm on March 3 which gradually got worse. *Id*. at 4. Petitioner also provided a letter from Dr. Yoshihiro Yamaguchi regarding acupuncture treatment between July 29, 2020 and July 13, 2021, which states that Petitioner came to him for treatment of her frozen shoulder. *See* Ex. 10 at 1-3. He states that he provided 11 acupuncture treatments and that Petitioner showed improvement in her range of motion after treatment, although she continued to have "some ongoing pain and symptoms." *Id*. at 2. He stated that his office was not able to provide records of those treatments. *Id.*

On November 9, 2020, Petitioner had an annual physical. Ex. 4 at 25. The record contains no mention of Petitioner's shoulder problems. Adhesive capsulitis is noted in the record of Petitioner next visit on January 18, 2021 as a "reviewed problem" without additional detail. *Id.* at 21-24. She received two doses of the Covid-19 vaccine in her right (non-injured) arm on January 22, 2021 and February 19, 2021. *Id* at 15, 19.

---

[3] The records of Philadelphia Acupuncture state that Petitioner also had appointments for July 16 and July 23, 2020, however no records of visits on those dates were provided. *See* Ex. 9 at 3.

3

On August 19, 2021 and August 26, 2021, Petitioner received additional acupuncture treatments. Ex. 6 at 5. Her handwritten intake form indicates that she sought treatment for her "achy" shoulder and neck stiffness, however the records do not include any significant description of the treatment provided. *Id*. at 3.

### III. Applicable Law

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs*., No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs*., 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs*., 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

4

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV. Findings of Fact

### A. *Onset*

Respondent maintains that Petitioner has not established Table onset because "although Petitioner claims that the onset of her symptoms was immediate, these claims are not corroborated by the contemporaneous medical records." Resp. at 7. Specifically, Respondent takes issue with one intervening appointment that Petitioner had 20 days after her vaccination that does not mention shoulder pain, and the three-month delay before Petitioner formally sought treatment for her shoulder pain. *Id*.

Petitioner saw her PCP on March 23, 2020, 20 days after her vaccination, and did not seek treatment for shoulder pain at that time. *See* Ex. 3 at 6-8. However, that appointment, which occurred at the beginning of the Covid-19 Pandemic, was conducted via video and addressed two specific chronic conditions for which Petitioner took medication. *Id*. Petitioner received refills of her medications without any examination. *Id*.

The record specifically notes that lab tests were recommended but had to be delayed due to the pandemic. *Id*. at 8. Given the circumstances of the time, including that Petitioner knew of the limitations on in-person examinations and testing, it is understandable that Petitioner may not have mentioned her shoulder pain during that visit.

Further, although Petitioner waited over three months to seek medical treatment for her shoulder pain, such delay does not preclude a Table onset finding. Petitioner's delay was not substantial when compared to other SIRVA petitioners, and particularly in light of the Pandemic, which hindered access to non-emergency medical care. *See e.g. Winkle v. Sec'y of Health & Human Servs.,* No. 20-0485V, 2021 WL 2808993 (Fed. Cl. Spec. Mstr. 2021) (finding onset after a nearly five-month delay); *Welch v. Sec'y of Health & Human Servs.* No. 18-0660V, 2020 WL 7483129 (Fed. Cl. Spec. Mstr. 2020) (finding onset after more than three- and one-half-month delay). Petitioner has also explained that due to the limitations imposed by the Pandemic, she attempted to self-treat her shoulder symptoms with stretching and weights. Ex. 2 at ¶11. She was later able to have a video appointment with her PCP on June 18, 2020, approximately 3.5 months after her vaccination, and was instructed to have an in-person appointment only four days later. Ex. 3 at 9-16. Petitioner has thus provided an explanation for her delay that is both reasonable and credible. Petitioner's affidavit testimony is not inconsistent with the medical records and adds to the totality of evidence supporting onset.

Finally, once Petitioner started treatment, there are multiple records that not only consistently relate Petitioner's pain to her vaccination but place the onset close in time to her vaccination. For example, on June 18, 2020, Petitioner reported "persistent pain" in her left shoulder since her "flu vaccine in early March 2020" during a telemedicine appointment with her PCP. Ex. 3 at 10. Then, at her first visit with a sports medicine specialist, on June 24, 2020, Petitioner reported "shoulder pain since 3/5/2020 after an influenza vaccination." Ex. 5 at 4. She continued to relate her shoulder pain to her flu shot during physical therapy and acupuncture treatments. *See e.g.,* Ex. 5 at 29; Ex. 9 at 4. While these records do not provide perfect evidence of onset, Petitioner provided additional detail in her affidavit, stating that her arm felt "sore and painful" the day of her vaccination and worsened the next day and over the following week. Ex. 2 at ¶10. In the end, Petitioner need only preponderantly establish that her pain "more likely than not" began within 48 hours of her vaccination – and here such a showing is made.

### B. *Injury Localized to Vaccinated Arm*

Respondent further argues that "Petitioner's pain was not limited to her left shoulder." Resp. at 8. He bases this argument on the record of Petitioner's first visit with

her PCP, when she "claimed her shoulder pain radiated down her arm and that she experienced numbness in the tips of her fingers." *Id*.

The records of Petitioner's visits with her PCP June 18, 2020 (virtual) and June 22, 2020 (in-person) do mention pain radiating from her shoulder and "some numbness in the tips of her fingers." Ex. 3 at 10, 14. However, upon examination there were no medical findings outside of Petitioner's shoulder. *Id*. at 16. Petitioner's doctor noted the possibility of a neck problem, but she also noted that Petitioner had not reported any neck pain. *Id*. In addition, Petitioner subsequently only had treatment focused on her left shoulder pain. *See* Ex. 5 at 4-8 (Petitioner was diagnosed with adhesive capsulitis with no mention of neck, arm, or hand symptoms.); Ex. 5 at 29 (Petitioner specifically denied "cervicalgia and radiating" symptoms during her physical therapy evaluation.).

Beyond the one notation cited by Respondent, there is no other evidence in the record that Petitioner complained of or received treatment for pain or injury outside of her left shoulder. While I acknowledge the one report of radiating pain, it is outweighed by the remainder of the evidence in Petitioner's medical and treatment records establishing that her pain and decreased range of motion was limited to her left shoulder. Despite Respondent's argument, Petitioner's medical records need not be devoid of all reference to pain or other symptoms outside the affected shoulder. I note again: a petitioner need only present preponderant, not certain, evidence to prevail. *See Moberly ex. rel. Moberly v. Sec'y of Health & Human Servs,* 592 F.3d 1315, 1322 (Fed. Cir. 2010) (holding that the applicable level of proof is not certainty, but the traditional tort standard of "preponderant evidence"). Thus, this objection also is defeated by preponderant record evidence.

## V. Ruling on Entitlement

### A. Requirements for Table SIRVA

I have found that Petitioner has preponderantly established that her pain began within 48 hours after her vaccination and that her symptoms were limited to her vaccinated shoulder. 42 C.F.R. § 100.3(c)(10)(ii-iii). Respondent has not contested Petitioner's proof on the remaining elements of a Table SIRVA. *See* 42 C.F.R. § 100.3(c)(10)(i), (iv). Therefore, I find that Petitioner has provided preponderant evidence to establish that she suffered a Table SIRVA injury.

### B. Additional Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements

of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received a flu vaccine in her left deltoid on March 3, 2020 at a pharmacy in Pennsylvania. Ex. 7 at 4; Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that she has not filed any civil action or received any compensation for his vaccine-related injury, and there is no evidence to the contrary. Ex. 2 at ¶8; Section 11(c)(1)(E) (lack of prior civil award). Finally, the records indicate that Petitioner has suffered the residual effects of her vaccine-related injury for more than six months and Respondent has not argued otherwise. *See* Ex. 6 at 5; Ex. 10 at 3; Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master